| | | |
|---|---|---|
| PSCC HOLINGS, LLC; | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:26-CR-90-KAC-JEM |
| | ) | |
| GREG WALKER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER DENYING TEMPORARY RESTRAINING
ORDER AND SETTING PRELIMINARY INJUNCTION HEARING**

This action is before the Court on Plaintiff PSCC Holdings, LLC's "Motion for Temporary Restraining Order and Preliminary Injunction" [Doc. 2]. For the following reasons, the Court denies Plaintiff's request for a temporary restraining order but sets a prompt hearing on the request for a preliminary injunction.

I.     **Background**

Plaintiff owns an event venue ("the Venue") in Sevierville, Tennessee [Doc. 4 at 1 (Declaration of Amanda Haveman ("Haveman Decl.") ¶ 3)]. The Venue consists of a two-story pavilion with two cabin-style lodges to its north and south, and it is used for weddings, religious outings, and company retreats [*See id.* (Haveman Decl. ¶¶ 3, 4)]. The Venue is a part of the Parkside Resort development, and it, like Parkside Resort generally, is managed by Parkside, LLC ("Parkside") [*Id.* at 2 (Haveman Decl. ¶¶ 5-7)]. Since 2005, Parkside has maintained quiet hours throughout the Resort, including at the Venue, between 11 p.m. and 7 a.m. [*See id.* (Haveman Decl. ¶ 11)]. Parkside also prohibits "house parties," "fireworks," and "outdoor music" [*Id.* at 3 (Haveman Decl. ¶ 14)]. These restrictions are included in the contracts between Parkside and

guests, posted in one of the Venue's lodges, and repeated to guests at check-in [*See id.* (Haveman Decl. ¶¶ 12-13)].

These restrictions have not satisfied everyone. Defendant Greg Walker lives in a house owned by his mother at 1181 Pine Mountain Road, Sevierville, Tennessee 37862 [*Id.* at 3 (Haverman Decl. ¶ 17)]. The home is approximately fifty (50) feet downhill from the Venue [*Id.*]. In 2022, Defendant told Parkside staff members that "if guests of the Venue did not cease making noise," he "was going to 'do what I have to do'" [*Id.* at 4 (Haveman Decl. ¶ 19)].

Beginning in April 2022, Defendant took action. He allegedly began to play loud music to "interrupt wedding ceremonies" and "to prevent guests from resting at the Venue" [*Id.* at 4 (Haveman Decl. ¶ 20)]. In May 2022, he allegedly played false tornado sirens twice at 7:45 p.m. and 5 a.m. [*Id.* (Haveman Decl. ¶¶ 23, 25)]. Defendant has also allegedly yelled and swore at guests, revved the engines of his tractor and dirt bike at "unreasonable hours," and mowed the lawn at "unreasonable hours" [*See id.* at 5 (Haveman Decl. ¶ 27)]. In October 2023, Defendant brandished a firearm at a guest who asked him to stop playing a loud podcast [*See id.* at 6 (Haveman Decl. ¶ 32); *see also* Doc. 4-10 at 29].

On April 21, 2023, Plaintiff sent Defendant a cease-and-desist letter, ordering him to stop disturbing the Venue's guests and threatening legal action [*See* Doc. 6-1]. The next day Defendant played loud music, got into an altercation with the Venue's guests, and exposed himself [Doc. 4 at 6-7 (Haveman Decl. ¶¶ 34-36); *see also* Doc. 4-5]. Law enforcement arrested him [Doc. 4 at 7 (Haveman Decl. ¶ 36)]. Defendant was sentenced to probation, and the Venue operated quietly while he was on probation [*See id.* (Haveman Decl. ¶ 37)]. But in September 2023, Defendant began again [*See id.* (Haveman Decl. ¶ 38)]. Defendant has allegedly blared loud noises from his front porch, discharged firearms during weddings, driven vehicles and machinery to disturb the

2

Venue, threatened guests, and allowed his dogs to go onto Plaintiff's property [*See id.* (Haveman Decl. ¶¶ 39-42)]. Most recently, on February 13, 2026, a guest complained that Defendant was screaming racial slurs [*See id.* at 10 (Haveman Decl. ¶ 54)].

This dispute reached the internet too. In November 2024, Defendant left a one-star review of the Venue on Google [*See* Doc. 4-6; Doc. 4 at 8 (Haveman Decl. ¶ 45)]. Defendant's review is not the only negative review. Dating back to 2023, multiple guests have left negative reviews [*See* Docs. 4-7, 4-8]. Some of these negative reviews reference Defendant's actions and Plaintiff's failure to give guests advance warning or to prevent Defendant's behavior [*See, e.g.*, Doc. 4-8 at 6-7].

Plaintiff's business has suffered. In July 2025, a woman told Parkside she would seek a different venue because of the "reviews about a disgruntled neighbor" [Doc. 4-9 at 1]. In August 2025, another woman decided against booking the Venue because "the neighbor is a nightmare" [Doc. 4-9 at 2]. Additionally, six (6) guests have backed out of agreements with Parkside to book the Venue [*See* Doc. 4 (Haveman Decl. ¶ 52)]. These cancelled agreements date back to November 2022, and it is not clear what prompted the cancellations [*See* Doc. 4-10].

On March 2, 2026, Plaintiff filed suit against Defendant [*See* Doc. 1]. The Complaint claims for nuisance, procurement of breach of contract, and tortious interference with business relationships [*See* Doc. 1 at 15-20]. Plaintiff also moves for a temporary restraining order and preliminary injunction under Federal Rule of Civil Procedure 65 [*See* Doc. 2]. Plaintiff argues that it is likely to succeed on the merits of its claim and that the equitable factors weigh in its favor [*See generally* Doc. 3]. Plaintiff requests that the Court order Defendant not to (1) engage in six (6) disruptive activities during events at the Venue or from sundown until 9 a.m., (2) trespass upon

the Venue, (3) engage in conduct interfering with Plaintiff's business, or (4) induce breach of contract between the Plaintiff and its clients [*See* Doc. 2 at 1-2].

## II.      Analysis

As relevant here, Federal Rule of Civil Procedure 65(b) permits the Court to issue a temporary restraining order if "specific facts in an affidavit or a verified complaint" "clearly show that immediate and irreparable injury, loss, or damages will result to the movant ***before the adverse party can be heard in opposition***." Fed. R. Civ. P. 65(b)(1)(A) (emphasis added).  These "stringent restrictions" reflect that "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted [to] both sides of a dispute."  *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).  The Supreme Court has emphasized that due process requirements of notice and an opportunity to be heard are especially critical where "a person may be deprived of the use of his property."  *See* 11A C. Wright, A. Miller, M. Kane, & A. Lahav, Federal Practice and Procedure § 2951 (3d ed. 2023) (citations omitted).  Relief is most appropriate if "notice to the adverse party is impossible," or delay "would render fruitless further prosecution of the action."  *See First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1995).

"Preliminary injunctions and TROs share the same four factors:"  "(1) the movant's likelihood of success on the merits; (2) irreparable injury to the movant; (3) substantial harm to others caused by the temporary order; and (4) the public interest."  *Bobay v. Wright State Univ.*, No. 22-4007, 2023 WL 3963847, at *3 (6th Cir. June 13, 2023) (citation omitted).  Irreparable harm is "indispensable" to obtaining a temporary restraining order "because, without it, a plaintiff cannot show why he needs relief now rather than at the lawsuit's end" or even when the Parties

4

can be heard preliminarily.  *See Int'l Union of Painters and Allied Trades Dist. Council No. 6 v. Smith*, 148 F.4th 365, 371 (6th Cir. 2025) (citation omitted).

Here, the lack of demonstrated "immediate and irreparable injury, loss, or damages" that would occur before Defendant "can be heard in opposition" dooms Plaintiff's request for the extraordinary relief of a temporary restraining order.  *See* Fed. R. Civ. P. 65(b)(1)(A).  Defendant allegedly began his challenged actions in April 2022, and except for a break in 2023 while on probation, he has persisted [*See* Doc. 4 at 4, 7 (Hartman Decl. ¶¶ 20, 40, 42)].  Plaintiff threatened legal action against Defendant back in April 2023 but comes to the Court nearly three (3) years later [*See* Doc. 6-1].  The negative online reviews are dated too [*See* Docs. 4-6, 4-7 at 4].  And the impact of those reviews was felt as early as July 2025 [*See* Doc. 4-9 at 1].  Even if Defendant's conduct could be attributed to every cancelled contract, this problem too has existed since 2023 [*See* Docs. 4 at 10 (Haveman Decl. ¶¶ 52-53); 4-10 at 3-9].  Given this long-simmering dispute, Plaintiff does not explain why it needs a temporary restraining order now before Defendant can be heard. There is no evidence of contracts in the offing, events on the horizon, or other hallmarks that would clearly show that it is necessary to preliminarily restrain Defendant from using his family property in certain ways without being heard.  Remember that the Court has only heard one side of this story.

Delay in seeking a temporary restraining order does not necessarily preclude relief, but it strongly suggests that Plaintiff will not suffer "immediate and irreparably injury, loss, or damage" "before the adverse party can be heard in opposition."  *See* Fed. R. Civ. P. 65(b)(1)(A); *see also* 11A C. Wright, A. Miller, M. Kane, & A. Lahav, Federal Practice and Procedure § 2951 (3d ed. 2023).  And delay without explanation for why relief is promptly needed is fatal here.  *See Rovio Ent. Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1097 (N.D. Cal. 2012) (six (6) month

delay); *Rumfish Y Vino Corp. v. Fortune Hotels, Inc.*, 403 F. Supp. 3d 1227, 1232 (M.D. Fla. 2019) (seven (7) month delay); *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 867 (S.D. Ohio 2008); *Sophia Parker Studios, Inc. v. Temperley*, No. 1:24-CV-2086, 2024 WL 4956689, at *11-12 (N.D. Ohio Dec. 3, 2024).

Plaintiff argues that Defendant's damage to its reputation is impossible to quantify and therefore irreparable [Doc. 3 at 14-15 (first citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992), then citing *Mich. Bell Tel. Co. v. Engler*, 257 F.3d 587, 599 (6th Cir. 2001))]. But courts have granted a temporary restraining order based on the loss of customer goodwill when there was a specific, imminent threat to that goodwill. *See Muffler Man Supply Co. Inc. v. TSE Auto Serv., Inc.*, 739 F. Supp. 3d 598, 604 (E.D. Mich. 2024) (defendant's imminent breach of a noncompete agreement and violations of the plaintiff's trademarks threatened reputation harm); *Steere Enters., Inc. v. Cikautxo Mex.*, No. 5:23-CV-615, 2023 WL 2633537, at *4 (N.D. Ohio Mar. 24, 2023) (defendant might cause the plaintiff to breach a contract and suffer reputational harm); *Air Int'l US (Inc.) v. Eng'r Plastic Components, Inc.*, No. 2:23-CV-11041, 2023 WL 6527761, at *4 (E.D. Mich. May 4, 2023) (same). That is lacking here. The record does not clearly show a specific and imminent threat to goodwill—why after all these years, a temporary restraining order is necessary before defendant can be heard. *See Sophia Parker*, 2024 WL 4956689, at *11; *see also Slave Legacy, LLC v. Son of Slave*, No. 3:23-CV-152, 2023 WL 3919317, at *6 (S.D. Ohio 2023). In the end, Plaintiff has not clearly shown that it will suffer immediate and irreparable harm before Defendant receives notice and an opportunity to be heard. *See* Fed. R. Civ. P. 65(b)(1)(A); *see also Granny Goose*, 415 U.S. at 439. So, the Court denies Plaintiff's request for a temporary restraining order.

6

### III. <u>Conclusion</u>

For the above reasons, the Court denies Plaintiff's request for a temporary restraining order in the "Motion for Temporary Restraining Order and Preliminary Injunction" [Doc. 2]. However, the Court will promptly take up the request for a preliminary injunction. To that end, the Court **DIRECTS** the Clerk of Court to mail (1) this Memorandum Opinion and Order, (2) "Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction" [Doc. 2], and (3) "Plaintiff's Memorandum of Law in Support of Its Motion for Temporary Restraining Order and Preliminary Injunction" [Doc. 3] to Defendant Greg Walker at 1181 Pine Mountain Road, Sevierville, Tennessee 37862. Defendant **MUST** file any response to Plaintiff's request for a preliminary injunction in the "Motion for a Temporary Restraining Order and Preliminary Injunction" [Doc. 2] by **March 19, 2026**. Plaintiff **MUST** file any reply to Defendant's response by **March 23, 2026**.

On **March 27, 2026 at 10:00 a.m.**, the Court will hold a hearing on Plaintiff's request for a preliminary injunction in the "Motion for a Temporary Restraining Order and Preliminary Injunction" [Doc. 2]. Any Party that wishes to present any witness at this hearing must file a Notice on the docket by **March 23, 2026**. That Notice must include the legal name of each proposed witness and an estimate of the amount of time needed to affirmatively present testimony from each proposed witness. **A failure to timely file the requisite Notice will result in the exclusion of any proposed witness from the hearing.**

SO ORDERED.

_____
KATHERINE A. CRYTZER
United States District Judge

7